## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>CENTRAL GROCERS, INC., *et al.*,<br><br>　　　Debtors. | Chapter 7<br><br>Case No.  17-13886<br>(Jointly Administered)<br><br>Hon.  Janet S. Baer |
| HOWARD B. SAMUELS, solely as<br>chapter 7 trustee of the estates of<br>CENTRAL GROCERS, INC., *et al.*,[1]<br><br>　　　Plaintiff,<br><br>v.<br><br>JOHN COARI, *et al.*,<br><br>　　　Defendants. | Adversary No.  19-01011 |

### NOTICE OF TRUSTEE'S MOTION (I) TO RECONSIDER WITH PREJUDICE DISMISSAL OF COUNT 18 AND (II) FOR LEAVE TO AMEND HIS COMPLAINT

**PLEASE TAKE NOTICE** that on **December 15, 2021, at 2:00 p.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Janet S. Baer, United States Bankruptcy Judge, or any other judge sitting in her stead, in Courtroom 615 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and present the **Trustee's Motion (I) to Reconsider With Prejudice Dismissal of Count 18 and (II) for Leave to Amend His Complaint**, a copy of which is attached.

---

[1] The Debtors in these Chapter 7 cases, along with the last four of each debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

**This motion will be presented and heard electronically using Zoom Government.**  No personal appearance in court is necessary or permitted.  To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/.  Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID and password.

**Meeting ID and password.**  The meeting ID for this hearing is 160 731 2971 and the password is 587656.  The meeting ID and password can also be found on the judge's page on the court's website.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date.  If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated: November 23, 2021                    Respectfully submitted,

                                        /s/  *J. Benjamin King*
                                        Eric D. Madden (admitted pro hac vice)
                                        J. Benjamin King (admitted pro hac vice)
                                        Leo B. Oppenheimer (admitted pro hac vice)
                                        REID COLLINS & TSAI LLP
                                        1601 Elm Street, 42nd Floor
                                        Dallas, TX 75201
                                        (214) 420-8900 (T)
                                        (214) 420-8909 (F)
                                        emadden@reidcollins.com
                                        bking@reidcollins.com
                                        loppenheimer@reidcollins.com
                                        *Special Litigation Counsel to Howard B. Samuels, Chapter 7 Trustee for the estates of Central Grocers, Inc., Strack and Van Til Super Market, Inc., and SVT, LLC*

2

## CERTIFICATE OF SERVICE

Leo B. Oppenheimer, the undersigned attorney, hereby certifies that on November 23, 2021, he caused the foregoing **Notice** and following **Trustee's Motion (I) to Reconsider With Prejudice Dismissal of Count 18 and (II) for Leave to Amend His Complaint** to be filed with the Court and served upon the following by the manner listed.

/s/ *Leo B. Oppenheimer*

**Electronic Mail Notice, via the Court's CM/ECF System:**

Leigh D. Roadman
Mason N. Floyd
Clark Hill PLC
130 E. Randolph Street
Suite 3900
Chicago, IL 60601
lroadman@clarkhill.com
mfloyd@clarkhill.com

*Counsel to Defendants John Coari, Anthony Dal Pra, Tony Ingraffia, Maria Kamberos, John Kotara, Frank Kumkoski, Joesph Kumkoski, John Lagestee, Kerry Lavelle, Robert Lee, Alfredo Linares, Kenneth Nemeth, Robertino Presta, James Robertson, and Lavelle Law, Ltd.*

Michael C. Moody
O'Rourke & Moody LLP
55 West Wacker Drive
Suite 1400
Chicago, IL 60601
mmoody@orourkellp.com

*Counsel to June Sullivan and Defendant John Sullivan*

Richard A. Bixter
Richard Winter
Holland & Knight LLP
131 S. Dearborn St.
Chicago, IL 60606
richard.bixter@hklaw.com
richard.winter@hklaw.com

*Counsel to Defendant John Cortesi*

Adam B. Rome
Zachary Mulcrone
Greiman, Rome & Griesmeyer, LLC
205 West Randolph St.
Suite 2300
Chicago, IL 60606
arome@grglegal.com
zmulcrone@grglegal.com

*Counsel to Defendant James Dremonas*

Robert Radasevich
Neal Gerber & Eisenberg LLP
Two North LaSalle St Ste 2200
Chicago, IL 60602
rradasevich@nge.com

*Counsel to Timothy Kubis*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| CENTRAL GROCERS, INC., *et al.*, | Case No.  17-13886 |
| Debtors. | (Jointly Administered) |
| | Hon.  Janet S. Baer |
| HOWARD B. SAMUELS, solely as chapter 7 trustee of the estates of CENTRAL GROCERS, INC., *et al.*,[1] | |
| Plaintiff, | |
| v. | Adversary No.  19-01011 |
| JOHN COARI, *et al.*, | |
| Defendants. | |

---

## TRUSTEE'S MOTION (I) TO RECONSIDER WITH PREJUDICE DISMISSAL OF COUNT 18 AND (II) FOR LEAVE TO AMEND HIS COMPLAINT

---

| | |
|---|---|
| Eric D. Madden | Michael M Eidelman |
| J. Benjamin King | William W. Thorsness |
| Leo B. Oppenheimer | Michael D. Leifman |
| REID COLLINS & TSAI LLP | VEDDER PRICE P.C. |
| 1601 Elm Street, Suite 4200 | 222 North LaSalle Street, Suite 2600 |
| Dallas, Texas 75201 | Chicago, Illinois 60601 |
| (214) 420-8900 (T) | (312) 609-7500 (T) |
| (214) 420-8909 (F) | (312) 609-5000 (F) |
| | |
| *Special Litigation Counsel to the Chapter 7 Trustee* | *Counsel to the Chapter 7 Trustee* |

---

[1] The Debtors in these Chapter 7 cases, along with the last four of each debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

PROCEDURAL BACKGROUND........................................................................................ 2

RELIEF REQUESTED......................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

I.      THE COURT SHOULD RECONSIDER ITS DISMISSAL OF THE TRUSTEE'S
        BREACH OF FIDUCIARY DUTY CLAIM BASED ON THE 2016 REBATE. ............ 3

      A.     The Court Has Discretion To Reconsider Its Interlocutory Order......................... 3

      B.     The Court Manifestly Erred in Dismissing the Trustee's Breach of Fiduciary
            Duty Claim Based on the 2016 Rebate. .................................................................. 4

            1.     The Court manifestly erred by writing a new provision into the
                 By-laws. .................................................................................................... 4

            2.     The Court manifestly erred in rejecting the Trustee's argument
                 regarding the 30% Holdback. .................................................................... 7

      C.     The Court Should Reconsider the "With Prejudice" Aspect of Its Dismissal. ....... 9

II.     THE COURT SHOULD ALLOW THE TRUSTEE TO AMEND HIS
        COMPLAINT TO ALLEGE ADDITIONAL FACTS SHOWING THAT THE
        DIRECTORS HAD DISCRETION OVER THE SIZE OF THE 2016 REBATE. .......... 11

      A.     CGI's Directors and Officers Testified That They Had Discretion
            Regarding the Rebate............................................................................................. 11

      B.     The 30% Holdback Was Not Just a Delay of the Rebate Payment or
            Reallocation to Purchase Credit............................................................................. 13

      C.     The Board Minutes Do Not Indicate That the Directors Established Reserves
            Before the Start of the Fiscal Year......................................................................... 15

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Accident Fund Ins. Co. of Am. v. Custom Mech. Const., Inc.*,
No. 3:16-cv-00251-RLY-MPB, 2020 WL 3397732 (S.D. Ind. Mar. 2, 2020) .......................... 9

*Anderson v. Cornejo*,
199 F.R.D. 228 (N.D. Ill. 2000); ........................................................................................... 3

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
377 F.3d 682 (7th Cir. 2004) ............................................................................................. 10

*Bausch v. Stryker Corp.*,
630 F.3d 546 (7th Cir. 2010) ............................................................................................. 10

*Best v. Indiana*,
No. 1:16-cv-02549-TWP-MJD, 2019 WL 699138 (S.D. Ind. Feb. 20, 2019) ......................... 3

*Burton v. Ghosh*,
961 F.3d 960 (7th Cir. 2020) ............................................................................................... 7

*Carrillo v. Jam Prods., Ltd.*,
527 N.E.2d 964 (Ill. App. Ct. 1988) .................................................................................... 5

*Costello v. Grundon*,
651 F.3d 614 (7th Cir. 2011). .............................................................................................. 6

*Galvan v. Norberg*,
678 F.3d 581 (7th Cir. 2012 ................................................................................................. 3

*Haag v. Cook Cty. Adult Probation*,
No. 17 C 05403, 2019 WL 1619971 (N.D. Ill. Apr. 16, 2019) .............................................. 10

*Home Ins. Co. v. Chicago & Nw. Transp. Co.*,
56 F.3d 763 (7th Cir. 1995) ................................................................................................. 6

*Maher Eng'g Co. v. Screwmatics of S.C., Inc.*,
No. 14-cv-3761, 2014 WL 6911295 (N.D. Ill. Dec. 9, 2014) ................................................ 6

*Morningside N. Apartments I, LLC v. 1000 N. LaSalle, LLC*,
75 N.E.3d 413 (Ill. App. Ct. 2017). ..................................................................................... 5

*Premcor Ref. Grp. Inc. v. Apex Oil Co., Inc.*,
No. 3:17-CV-738-NJR, 2020 WL 230624  (S.D. Ill. Jan. 15, 2020) ................................... 3, 5

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*,
786 F.3d 510 (7th Cir. 2015) ............................................................................................. 2, 9

*Rush Presbyterian-St. Luke's Med. Ctr. v. Prudential Ins. Co.,*
  No. 02 C 0947, 2004 WL 723849 (N.D. Ill. Mar. 30, 2004); ................................................... 5

*Samuels v. Durand Pacemaker, Inc.,*
  No. 19-ap-01018 (Bankr. N.D. Ill.) ........................................................................... 3

*Samuels v. J.B. Sullivan, Inc.,*
  No. 19-ap-01021 (Bankr. N.D. Ill.). ......................................................................... 3

*Samuels v. Pete's Fresh Market 4343 Corp.,*
  No. 19-ap-01019 ................................................................................................... 3

*Shapich v. CIBC Bank USA,*
  123 N.E.3d 93 (Ill. App. Ct. 2018) ......................................................................... 6

*Star Indem. & Liab. Co. v. YRC, Inc.,*
  No. 15-cv-6902, 2018 WL 9055234 (N.D. Ill. Feb. 15, 2018) ................................. 4

*Williams v. Merle Pharmacy, Inc.,*
  No. 15-cv-1262, 2016 WL 8698534 (C.D. Ill. Feb. 29, 2016) ................................. 10

**Rules**

FED. R. BANKR. P. 2004 ...................................................................................... 12–14

FED. R. BANKR. P. 7054 ........................................................................................ 3

FED. R. BANKR. P. 9014 ........................................................................................ 3

FED. R. CIV. PROC. 54(b) ................................................................................ 3, 4, 10

FED. R. CIV. PROC. 15(a)(2) ................................................................................ 10

Howard B. Samuels (the "Trustee"), solely in his capacity as Chapter 7 trustee for the bankruptcy estates of Central Grocers, Inc. ("CGI"), Strack and Van Til Super Market, Inc., and SVT, LLC, hereby files this Motion (I) to Reconsider With Prejdudice Dismissal of Count 18 and (II) for Leave to Amend His Complaint.

## INTRODUCTION

1.      This Motion relates to only one of the counts addressed in this Court's November 9, 2021, *Order Granting Defendants' Motion to Dismiss Trustee's Adversary Complaint* [Doc. 217] (the "Order").  The Order dismissed with prejudice the Trustee's claim that CGI's former directors (the "Directors") breached their fiduciary duties to the company by authorizing its payment of a $44.5 million rebate (the "Rebate") to CGI's member stores, including many stores owned or controlled by the Directors, when CGI was in severe financial distress.  The critical holding in the Order was that the Trustee had not "establish[ed]" that the Directors had discretion over the amount of the Rebate.[1]  According to the Order, without discretion over the size of the Rebate, the Directors could not have breached a fiduciary duty by authorizing the Rebate.[2]

2.      The Trustee respectfully submits that the Court made manifest errors of law in concluding that the Trustee had not sufficiently pled that the Directors had discretion over the Rebate.  The Court improperly applied the governing standards of review on a motion to dismiss, adopted new arguments made by the Directors in their reply brief, and relied on unsupported and unpled "facts."  Most significantly, the Court grafted onto CGI's By-laws a new limitation on the Directors' discretion over the amount of the Rebate that was contrary to express language of the By-laws.  The Trustee respectfully requests that the Court reconsider its ruling on this one claim.

---

[1] *See* Order at 12.

[2] *See id.*

3.      At the least and in the alternative, the Trustee submits that the Court manifestly erred in dismissing the breach of fiduciary duty claim with prejudice, thereby precluding the Trustee from amending his Complaint to further demonstrate the Directors' discretion over the amount of the Rebate. The Trustee has not amended his Complaint previously, and federal law, particularly in the Seventh Circuit, provides for a presumption "in favor of giving plaintiffs at least one opportunity to amend."[3]   "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."[4]  The Trustee asks the Court to reconsider the "with prejudice" nature of its dismissal of Count 18, so the Trustee may seek leave to amend this count.

4.      Finally, the Trustee respectfully requests leave to amend the Complaint. The Trustee has firm bases for alleging many additional facts allegations demonstrating that the Directors had discretion over the amount of the Rebate.

## PROCEDURAL BACKGROUND

5.      The Trustee's Complaint sets forth two counts against the Directors based on their decision to authorize the $44.5 million Rebate to CGI's member stores, including the Directors' own stores, while CGI was in a steep financial decline. In Count 18 of the Complaint, the Trustee alleged that the Directors breached their fiduciary duties to CGI by authorizing the Rebate, and the Trustee sought to recover the portion of the Rebate actually paid out by CGI—$21.34 million. Count 19, which is not the subject of this motion, sought to recover this same amount as an illegal dividend under Illinois law.

---

[3] *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) (citation omitted); *see also id.* ("[D]enying a plaintiff [at least one opportunity to amend] carries a high risk of being deemed an abuse of discretion"); *id.* at 519 ("When a district court denies a plaintiff such an opportunity [to amend], its decision will be reviewed rigorously on appeal.").

[4] *Id.* at 519–20 (emphasis in original) (internal quotation omitted).

6.      On February 18, 2020, the Directors moved to dismiss.[5]  The Trustee filed an opposition brief on April 17, 2020,[6] and the Directors replied on May 15, 2020.[7]  The Trustee submitted no further briefing.  The Court did not hear oral argument on the Directors' Motion.

7.      The Court has issued orders granting or denying aspects of the motions to dismiss filed by the defendants to this adversary proceeding and to the motions to dismiss filed in the actions the Trustee has brought against the retail stores owned by the Directors.[8]  Whenever the Court granted a motion to dismiss, it did so without prejudice, allowing the Trustee the opportunity to amend his pleading, with one exception: The Court dismissed Counts 18 and 19 with prejudice.

## **RELIEF REQUESTED**

8.      The Trustee respectfully asks the Court to reconsider its dismissal of Count 18, or, in the alternative, to reconsider the "with prejudice" nature of its dismissal of Count 18.[9]  The Trustee also respectfully requests leave to amend his Complaint to add allegations relating to the Directors' discretion over the size of CGI's patronage rebates.

## **ARGUMENT**

## I.      **THE COURT SHOULD RECONSIDER ITS DISMISSAL OF THE TRUSTEE'S BREACH OF FIDUCIARY DUTY CLAIM BASED ON THE 2016 REBATE.**

### A. **The Court Has Discretion To Reconsider Its Interlocutory Order.**

9.      The Order is interlocutory because the Court has not entered judgment against the Directors or against all other defendants.  Rule 54(b) of the Federal Rules of Civil Procedure, rather

---

[5] *See Partial Motion to Dismiss and Memorandum in Support Thereof* (the "Motion") [Doc. 81].

[6] *See Trustee's Opposition to Certain Defendants' Partial Motion to Dismiss* (the "Opposition" or "Opp.") [Doc. 105].

[7] *See Defendants' Reply in Support of Their Partial Motion to Dismiss* (the "Reply") [Doc. 121].

[8] Three motions to dismiss filed by retail grocery stores owned by the Directors remain outstanding: *Samuels v. Pete's Fresh Market 4343 Corp.*, No. 19-ap-01019 (Bankr. N.D. Ill.) (the "*Pete's* Adversary"); *Samuels v. Durand Pacemaker, Inc.*, No. 19-ap-01018 (Bankr. N.D. Ill.); and *Samuels v. J.B. Sullivan, Inc.*, No. 19-ap-01021 (Bankr. N.D. Ill.).

[9] The Trustee does not seek reconsideration of the Court's ruling as to Count 19.

than the more restrictive Rule 59(e), applies to motions to reconsider interlocutory orders.[10]  Rule

54(b) "governs non-final orders and permits revision at any time prior to the entry of judgment."[11]

10.     Motions for reconsideration may be granted to "correct manifest errors of law or

fact."[12]  A manifest error of law may occur "where the court has misunderstood a party, made a

decision outside of the issues presented by the parties, made an error of apprehension (not of

reasoning), where a significant change in the law has occurred, or where significant new facts have

been discovered."[13]  Courts in this judicial district have held that "it is within the court's discretion

to consider new arguments" raised in Rule 54(b) motions.[14]

### B. The Court Manifestly Erred in Dismissing the Trustee's Breach of Fiduciary Duty Claim Based on the 2016 Rebate.

#### 1. The Court manifestly erred by writing a new provision into the By-laws.

11.     Defendants' Motion argued that the Directors lacked any discretion over the size of

the Rebate because (a) CGI's By-laws provided that it was their intent that CGI's patronage rebates

would qualify as non-taxable "patronage dividends" for tax purposes, and (b) to so qualify, the

Directors could not have had any discretion over the size or fact of CGI's patronage rebates.[15]

---

[10] *See* Federal Rules of Bankruptcy Procedure 7054 and 9014.

[11] *Galvan v. Norberg,* 678 F.3d 581, 587 n.3 (7th Cir. 2012).

[12] *Best v. Indiana*, No. 1:16-cv-02549-TWP-MJD, 2019 WL 699138, at *1 (S.D. Ind. Feb. 20, 2019)  (internal quotation omitted) (granting in part a motion to reconsider a dismissal "with prejudice" and granting in part a motion to amend).

[13] *Premcor Ref. Grp. Inc. v. Apex Oil Co., Inc*., No. 3:17-CV-738-NJR, 2020 WL 230624, at *3 (S.D. Ill. Jan. 15, 2020) (granting in part a motion to reconsider the district court's own previous grant of motions to dismiss).

[14] *Anderson v. Cornejo*, 199 F.R.D. 228, 253 (N.D. Ill. 2000); *Star Indem. & Liab. Co. v. YRC, Inc.,* No. 15-cv-6902, 2018 WL 905523, at *4 (N.D. Ill. Feb. 15, 2018) (stating, on a motion to reconsider an interlocutory order, "[i]t is within the Court's discretion to consider new arguments, or elaborations on old arguments, notwithstanding the detail in which a party has previously pressed the point").

[15] *See* Motion at 1-2, 7-13.

4

12.     In his response, the Trustee demonstrated that, whatever the supposed intent of its drafters, the By-laws' black-and-white terms gave the Directors discretion over the size of the patronage rebate.  The By-laws specifically provided that:

> The Board of Directors may set aside reasonable reserves ***from time to time*** by resolution ***as it deems appropriate*** to provide for ***any contingencies*** or expected losses of the Corporation and as it otherwise deems to be in the best interests of the Corporation.[16]

The By-laws further provided that patronage rebates would be net of such reserves.[17]  These provisions thus expressly gave the Directors discretion to set reserves, which would impact the size of CGI's rebates.

13.     Defendants first suggested in a footnote to their Motion (at 12 n.8), and later elaborated in their Reply (at 1, 8), that the By-laws contained an unwritten requirement that the Directors must set reserves prior to the start of the fiscal year.  The Court adopted the Defendants' suggestion and wrote a timing requirement into the By-laws.[18]  The Trustee respectfully submits that this was a manifest error of law for several reasons.

14.     ***First,*** the By-laws say the Board of Directors (the "Board") may set aside reserves "from time to time" and for "***any*** contingencies."  They do not say the Board may set reserves only prior to the start of the fiscal year or only at a time that ensures that the rebates are non-taxable. Nor do they say that the Board may set aside reserves only for "future" contingencies "for the following fiscal year."[19]  By reading a requirement into the By-laws that reserves must be set at the start of the fiscal year, the Court understandably sought to harmonize the expressed intent of

---

[16] By-laws Art. XII, Section 1 (emphasis added) (Motion Ex. A).

[17] By-laws Art. XII, Section 2.  *See generally* Opp. 8–9.

[18] *See* Order at 10.

[19] *Cf.* Order at 10.

the By-laws to have CGI's patronage dividends be non-taxable with the rest of the text,[20] but the Court cannot fashion new, contradictory language to (supposedly) help the By-laws accomplish their stated taxation goal.[21]

15.    ***Second,*** the By-laws are (at worst) ambiguous as to whether they require the Directors to set reserves prior to the start of the fiscal year.  Under Illinois law, words in a contract are ambiguous if they are "reasonably susceptible to more than one meaning."[22]  If the By-laws were susceptible to the meaning urged by the Directors and adopted by the Court, they are certainly susceptible to the more natural meanings of "from time to time" and "any" contingency, which do not impose a temporal limitation.  As the cases cited by the Court recognize, "where the contract is ambiguous the contract's meaning becomes a factual question and the interpretation of the contract and resolution of the ambiguity is left to the trier of fact."[23]  Determining that ambiguous terms have a particular meaning on a motion to dismiss was clear error.

16.    ***Third***, in reading the time limitation on setting reserves into the By-laws, the Court conceived and relied on the proposition that the Directors, as a matter of fact, set the size of the reserves at the beginning of each fiscal year.  The Court wrote: "Accordingly, at the start of fiscal

---

[20] The Trustee maintains that the Directors' discretion to set aside reserves for contingencies during the fiscal year did not render all of CGI's earnings subject to income taxation.  *See* Opp. at 10-12.

[21] *See Carrillo v. Jam Prods.*, *Ltd.*, 527 N.E.2d 964, 967 (Ill. App. Ct. 1988) ("Unless a contract is ambiguous, its meaning must be determined from the words used and courts will not read into the contract provisions that do not exist therein."); *see also Home Ins. Co. v. Chicago & Nw. Transp. Co.*, 56 F.3d 763, 769–70 (7th Cir. 1995) (rejecting an insurer's argument that the contract phrase "any cause whatever" encompasses only a specific type of accident in light of the "contractual purpose" because such an argument would impose "a limitation . . . that is not contained in the very language of the contract"); *Maher Eng'g Co. v. Screwmatics of S.C., Inc.*, No. 14-cv-3761, 2014 WL 6911295, at *3-4 (N.D. Ill. Dec. 9, 2014) (refusing to "read[ ] a limitation" into one part of an agreement that "does not exist"); *Premcor Ref. Grp.*, 2020 WL 230624, at *3 (applying Illinois contract interpretation principles to a consent order and determining that "the most logical reading" of the phrase "any liability" would be "broad" and inclusive, not limiting)

[22] *Morningside N. Apartments I, LLC v. 1000 N. LaSalle, LLC*, 75 N.E.3d 413, 419 (Ill. App. Ct. 2017).

[23] *Rush Presbyterian-St. Luke's Med. Ctr. v. Prudential Ins. Co.,* No. 02 C 0947, 2004 WL 723849, at *3 (N.D. Ill. Mar. 30, 2004); *see also Shapich v. CIBC Bank USA*, 123 N.E.3d 93, 99 (Ill. App. Ct. 2018) (reversing a lower court's grant of summary judgment where "[n]either [the plaintiff's] nor the [defendant's] interpretation of the contractual language . . . is facially unreasonable," and thus the language was ambiguous).

year 2016—on or before August 1, 2015—the CGI Board determined how much of CGI's profit

to retain, with the remaining amount to be distributed to Members in good standing as a patronage

dividend . . . .".[24]  This factual claim is not in the Complaint, nor any document properly considered

on a motion to dismiss, nor even in the Directors' briefing.  The Directors merely claim that the

Board "*could* set reserves only for the following fiscal year" "[f]or the Bylaws to be internally

consistent,"[25] and that CGI "*would have* had to" set reserves prior to the start of the fiscal year to

achieve the desired tax benefits.[26]  Respectfully, this factual "finding" is manifest error.

> **2.    The Court manifestly erred in rejecting the Trustee's argument regarding the 30% Holdback.**

17.    As evidence that the Directors had discretion over the size of the Rebate, the Trustee

noted that the Directors actually exercised that discretion by voting to indefinitely withhold 30%

of the Rebate (the "Holdback") so CGI could remain in compliance with bank loan covenants.[27]

The bases for the Court's rejection of this argument further demonstrate manifest error.

18.    *First,* the Court reasoned that the By-laws provided that a rebate could be paid

within 8½ months after the close of the fiscal year, and all the Directors did was delay the timing

of the Rebate payment, which was consistent with this provision of the By-laws.  The 8½ months

argument arose for the first time in the Directors' Reply (at 2).  The Trustee did not have a chance

to respond to this argument,[28] and the Court's adoption of the argument compels reconsideration

---

[24] Order at 10.

[25] Motion at 12 n.8 (emphasis added).

[26] Reply at 1, 8 (emphasis added).

[27] *See* Opp. at 9; Compl. ¶¶ 91-92.

[28] In the Seventh Circuit, a district court abuses its discretion by allowing a defendant to raise a new argument in a reply brief supporting a motion to dismiss.  *Burton v. Ghosh*, 961 F.3d 960, 970–71 (7th Cir. 2020).  Doing so "unfairly prejudice[s]" the plaintiff.  *Id.*  In addition, that the Trustee theoretically could have moved for leave to file a sur-reply does not make the Directors' reply-brief arguments appropriate for consideration.  *See id.* at 971 n.5 ("[W]e will not hold against a party its decision not to seek leave to file a sur-reply." (citing *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011))).

because the argument was not fairly presented by the parties.  Moreover, the argument holds no

water because the Directors did not vote to hold back 30% of the Rebate for only a particular

amount of time.  As alleged in the Complaint, the Directors voted to hold back 30% of the Rebate

until the withheld portion could be paid while remaining in compliance with bank covenants—

which never happened.[29]  Although the By-laws' 8½ month payment provision had nothing to do

with the Holdback, the fact that the Directors could hold back part of the Rebate to improve CGI's

financial condition to satisfy its lenders is strong evidence that the Directors had discretion over

the amount of the Rebate.

19.    ***Second,*** the Court apparently found, as a matter of fact, that, "[a]fter the Board

agreed to withhold part of the Patronage Rebate, CGI sent letters to its Members, explaining that

30% of each Member's Rebate would be credited against future purchases."[30]  The Court

manifestly erred in making this finding.

20.    The letters the Court referenced were discussed in the Reply (at 2 & n.3) and

attached thereto, and the Trustee did not have an opportunity to respond to the Directors' assertions

about the letters.[31]  The letter at issue says that the member's withheld 30% portion "was ***recorded***

in your store purchase deposit account."[32]  The letter does not say, as the Directors urged and the

Court found, that the withheld 30% portion "would be credited against future purchases."[33]  (And,

as the Trustee would plead in an amended complaint, CGI did not, in fact, credit the Holdback

---

[29] *See* Compl. ¶¶ 92, 94.

[30] Order at 11 n.9.

[31] The letters are referenced in the complaint in the *Pete's* Adversary. That complaint explains that the members' portions of the Holdback were "recorded solely for bookkeeping purposes in the member's deposit account."  *Pete's* Complaint at ¶ 28.  The Order did not address this explanation.

[32] Reply Ex. B (emphasis added).

[33] Order at 11 n.9; Reply at 2.

portion against future purchases.)  The Court manifestly erred in relying on documents not referenced in the Complaint and in adopting arguments raised for the first time in a reply brief to which the Trustee had no opportunity to respond.[34]  Furthermore, the Court did not "draw all reasonable inferences" in the Trustee's favor in its review of the letters.[35]  Indeed, the Court drew inferences against the Trustee and thereby further committed manifest error.[36]

### C. The Court Should Reconsider the "With Prejudice" Aspect of Its Dismissal.

21.    Although it did not expressly deny the Trustee's alternative request for leave to amend,[37] the Court dismissed Counts 18 and 19 "with prejudice" while giving leave to amend other dismissed counts.[38]  By dismissing Count 18 with prejudice at this stage of the litigation, such that the Trustee may not at least move the Court for leave to amend his breach of fiduciary duty claim relating to the Rebate, the Court committed a manifest error of law.

22.    The Court's determination that the Trustee could not amend to allege facts demonstrating that the Directors had discretion over the size of the Rebate seems driven by the Court's view on the law regarding the effect of such discretion on the taxability of CGI's income. The Court based its "with prejudice" determination, in part, on the "nature of cooperatives" and "the relevant statutes and caselaw."[39]  But, as the Trustee argued, even if the Directors' discretion

---

[34] *See supra* note 29.

[35] *Cf.* Opp. at 4 (describing review standards on a motion to dismiss).

[36] The Court took the same approach in its review of the September 15, 2016, Minutes, again adopting an interpretation offered for the first time in the Reply (at 10 n.10).  The Minutes say, in a passage unaddressed by the Court, that "management has made a ***recommendation to the Board to approve*** a rebate distribution of $44.5M to the members," and the Minutes recount the Directors voting on a resolution to approve the Rebate.  Dkt. 105-1, Ex. A, at 2-3 (emphasis added).  The Minutes in no way support the conclusion that the "formal act of voting on the Rebate was merely ministerial" (Order at 11), and certainly that conclusion could not be reached after drawing all reasonable inferences in favor of the Trustee.

[37] *See* Opp. at 23-24.

[38] *See* Order at 12, 20.

[39] *See* Order at 12.

would have brought with it tax implications, that observation is insufficient to negate the existence of the Directors' discretion.[40]  While an amended pleading cannot change the relevant tax law, it would provide further bases for the Trustee's claim that the Directors, as a matter of fact and despite the tax implications, possessed actual discretion over the amount of the Rebate.

23.     There is a strong presumption under the Federal Rules, and particularly in the Seventh Circuit, in favor of giving plaintiffs at least one chance to amend.[41]  Denying an initial opportunity to amend raises a significant risk of reversal.[42]  Although there are instances in which "it is clear that the defect [identified in the order granting a motion to dismiss] cannot be corrected so that amendment is futile," those "cases of clear futility at the outset of a case are rare."[43]  This is not one of those rare cases.

24.     In keeping with this clear policy of allowing a plaintiff at least one opportunity to amend after an initial dismissal, the Court should change the extent of dismissal to "without prejudice" so the Trustee can seek leave to amend.  Courts in this circuit have reconsidered their own interlocutory "with prejudice" dismissals to allow amendment in similar circumstances.[44]

---

[40] *See* Opp. at 10.

[41] *See* Opp. at 23-24.

[42] *See supra* at ¶ 3 & n.3.

[43] *Runnion,* 786 F.3d at 519*; see also Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) ("[I]f a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success."); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").

[44] *See Accident Fund Ins. Co. of Am. v. Custom Mech. Const., Inc.*, No. 3:16-cv-00251-RLY-MPB, 2020 WL 3397732, at *1 (S.D. Ind. Mar. 2, 2020) (reversing the court's own previous dismissal with prejudice because "[t]he court should have allowed [the counterclaiming plaintiff] at least one opportunity to amend its counterclaim . . . and attempt to add supporting allegations"); *Haag v. Cook Cty. Adult Probation*, No. 17 C 05403, 2019 WL 1619971, at *2-3 (N.D. Ill. Apr. 16, 2019) (revising a previous dismissal "with prejudice" on forfeiture grounds to be "without prejudice" on a Rule 54(b) motion to reconsider); *Williams v. Merle Pharmacy, Inc.*, No. 15-cv-1262, 2016 WL 8698534, at *4, 6 (C.D. Ill. Feb. 29, 2016) (granting a motion to amend a complaint pursuant to Rule 15(a)(2) despite previously dismissing two claims "with prejudice" in part because Rule 54(b) permitted revision before final judgment).

25.    Multiple factors support the Court's reconsideration of the "with prejudice" nature of its decision.  First, as discussed above, there is significant reason to believe the Court erred in dismissing Count 18 at all.  Second, the Trustee has not filed an amended complaint yet.  Third, the Trustee has additional claims to replead in this matter, so allowing amendment of the Rebate/breach of fiduciary duty claim will not delay the entry of judgment.  Fourth, as demonstrated below, the Trustee's proposed amendments to the Complaint will provide ample additional support for the claim that the Directors had discretion over the size of the Rebate.

## II.    THE COURT SHOULD ALLOW THE TRUSTEE TO AMEND HIS COMPLAINT TO ALLEGE ADDITIONAL FACTS SHOWING THAT THE DIRECTORS HAD DISCRETION OVER THE SIZE OF THE 2016 REBATE.

26.    The Trustee respectfully requests that the Court grant him leave to amend his Complaint.  Submitted herewith as **Exhibit A** is a version of the Complaint including the proposed amendments, in redline.[45]  These proposed amendments demonstrate that amendment is not futile: Ample evidence indicates that the Directors had discretion over the size of CGI's rebates.  At the least, a factual issue exists as to whether they had discretion.

### A.    CGI's Directors and Officers Testified That They Had Discretion Regarding the Rebate.

27.    Multiple CGI Directors and officers testified that the Directors had discretion over the size of the Rebate and over whether the Directors could use otherwise rebatable income for other corporate purposes.  This testimony strongly supports the Trustee's position.

28.    CGI's former Chief Executive Officer (Ken Nemeth) testified as follows:

> Q.    Who decided how big of a rebate CGI would pay to the Class A members?

---

[45] Exhibit A sets forth only the proposed changes the Trustee would make regarding his claims based on the Directors' approval of the 2016 Rebate.  The Court has allowed the Trustee the opportunity to amend his Complaint with respect to other claims.  Exhibit A does not suggest amendments as to those other claims so the amendments specific to the dismissal of Count 18 are readily apparent. In addition, the Court has instructed that the parties are to discuss the Trustee's plans for amending the Complaint generally at a hearing on December 15.

> A. The board of directors.
>
> Q. Did the board have discretion as to what size of rebate to pay?
>
> A. Yes.
>
> . . .
>
> Q. But if the CGI board wanted to use some of its operating profits to pay down debt rather than distributing the money as a rebate, CGI could do that, right?
>
> A. That's correct.[46]

29. CGI's former Chief Financial Officer (Tim Kubis) testified as follows:

> Q. Did the board have discretion in what size of rebate to declare?
>
> A. Yeah, they declared the rebate.
>
> Q. And did the board have discretion as to how much the rebate would be?
>
> A. Yes.[47]
>
> . . .
>
> Q. Suppose the board decided it wanted to retain some portion of the earnings to pay down debt. Could it do that?
>
> A. It could. Again, I'm being redundant, but it wouldn't make the members too happy.
>
> Q. Yeah. But if the board determined that it was in CGI's best interest at that point to pay down debt rather than pay the money to the members, it could do that?
>
> A. Theoretically, yes.[48]

30. CGI Director John Sullivan testified as follows:

> Q. Did CGI have discretion about whether to pay a rebate at all?
>
> A. Yes.[49]
>
> . . .
>
> Q. So let's say CGI made a profit in a year, but the board decided it wanted to make capital improvement like invest in SVT. Instead of distributing the rebate, the board could have decided to do that; right?
>
> A. Yes.
>
> Q. What if CGI wanted to use some of that profit to pay down debt and not pay a rebate, the board could have authorized that as well?
>
> A. Yes.[50]

---

[46] Nemeth Rule 2004 Exam. at 104:7-12; 105:6-10 (Aug. 15, 2018) (Ex. B).

[47] Kubis Rule 2004 Exam. at 214:9-14 (Sept. 6, 2018) (Ex. C).

[48] *Id.* at 217:1-10.

[49] Sullivan Rule 2004 Exam. at 124:1-13 (May 16, 2018) (Ex. D).

[50] *Id.* at 12–21.

31.    CGI Director Tony Ingraffia testified as follows:

> Q.    If the board determined that it wanted to set aside a portion of the rebate   management recommended for other corporate purposes, could the board do that?
> A.    Yes.
> Q.    So the board did not have to accept the rebate that management proposed; right?
> A.    If there's any financial issues.[51]

**B.    The 30% Holdback Was Not Just a Delay of the Rebate Payment or Reallocation to Purchase Credit.**

32.    As discussed above, the Court suggested that the 30% Holdback merely delayed the payment of that portion of the Rebate in keeping with the By-laws and therefore did not demonstrate any Director discretion over the size of the Rebate.[52]  But Tim Kubis (the former CFO) explained in an email to the Directors the purpose of the Holdback and explained that the Directors were adjusting, at least temporarily, the amount of the Rebate:

> More concerning however, is projected non-compliance with our minimum fixed charge ratio of 1.15x - **this ratio measures the ability to service debt levels from cash flows, i.e. do we have enough cash to repay our loan plus interest to the banks**.  The bank group can be accommodative on relaxing leverage ratios so long as enough cash flow is being generated to repay the debt - going below the 1.15x minimum is not an option (projected at or below 1.0x in Q2 and Q3).  **The lever to fix this problem is to _adjust the amount_ of patronage rebate paid out to members**, as this is the most significant component of the fixed charge computation.  In order to move forward in a constructive manner with our bankers and be in loan compliance, we need to pay out our F2016 rebate as follows - 60% in cash, !0% to Class B and defer 30% until within an acceptable fixed charge coverage ratio.  Based on achieving projections, the 30% deferral would be paid in Q4, however we would have to establish loan compliance with the bank group first. … I'm sure you can appreciate **the banks preference to adjust distributions out of the company if it puts debt service at risk**.[53]

---

[51] Ingraffia Rule 2004 Exam. at 95:5-12 (May 18, 2018) (Ex. E).

[52] *See supra* ¶ 18.

[53] Email from T. Kubis to Directors dated Oct. 1, 2016 (Ex. F) (emphasis added).

33.     Although Kubis described the Holdback with some language suggesting it was merely a delayed payment, the true nature of the Holdback is understood by context.  Because CGI normally pulled the rebate out of earnings (*i.e.,* a "component of the fixed charge computation"), paying the full Rebate caused CGI's earnings to shrink below 1.15 of its fixed charges in 2016.  According to Kubis, by putting 30% of the Rebate amount back into earnings, CGI had the requisite amount of earnings available to service its fixed charges, thus satisfying the bank.   In other words, Kubis and CGI treated the 30% as CGI's earnings and not the members' Rebate.  Kubis referred to the Holdback as a "deferral" because, hopefully, CGI's earnings would improve so that it could pay the Holdback and remain in compliance with the covenant.  But until that happened, the Holdback belonged to CGI.

34.     In addition, as discussed above, the Court determined that CGI credited each member's portion of the Holdback against the member's future purchases.[54]  This is factually not true.  Tim Kubis testified that the held back amount was just "parked" in the members' cash deposit accounts for tracking purposes.[55]  Director John Cortesi testified that his stores did not receive any financial benefit from the held back amounts.[56]  Board Chair John Kotara testified that his stores were not allowed to pay off groceries with the held back portion of the rebate, at least in 2016.[57]  Furthermore, if CGI had really credited its members with their portions of the Holdback, then the members would have paid taxes on that amount.  To the contrary, CGI ultimately paid the taxes on the Holdback amount, further demonstrating that it was not the members' property because the

---

[54] *See supra* ¶¶ 19-20.

[55] *See* Kubis Rule 2004 Exam. 230:10-231:10 (Ex. C); *see also* Oct. 31, 2016, Email from T. Kubis (noting that the heldback portion of the rebate "was parked to purchase deposit accounts just to track") (Ex. G).

[56] *See* Cortesi Rule 2004 Exam. 117:21-118:11, April 27, 2018 (Ex. H).

[57] *See* Kotara Rule 2004 Exam. 200:10-201:12, May 17, 2018 (Ex. I).

14

Directors had exercised their discretion over the size of the Rebate, determining that a portion of CGI's earnings would be retained for CGI's corporate purposes.

### C. The Board Minutes Do Not Indicate That the Directors Established Reserves Before the Start of the Fiscal Year.

35.     As discussed above, the Order claimed that the Directors determined prior to August 1, 2015, "how much of CGI's profit to retain" from earnings in the coming fiscal year.[58] There is no indication in CGI's Board Meeting Minutes that this occurred.  A collection of all Board Meeting Minutes for the twelve months preceding August 1, 2015, are submitted as Exhibits J-1 to J-5.

### CONCLUSION

36.     For the reasons set forth above, the Trustee respectfully requests that the Court reconsider its dismissal of Count 18, or alternatively, reconsider the "with prejudice" nature of the dismissal.  The Trustee further requests that the Court grant him leave to amend his Complaint to add further allegations demonstrating the Directors' discretion over the size of the Rebate.[59]


Dated: November 23, 2021                              Respectfully submitted,

                                                       /s/  J. Benjamin King
                                                      Eric D. Madden (admitted *pro hac vice*)
                                                      J. Benjamin King (admitted *pro hac vice*)
                                                      Leo B. Oppenheimer (admitted *pro hac vice*)
                                                      REID COLLINS & TSAI LLP
                                                      1601 Elm Street, 4200
                                                      Dallas, Texas 75201
                                                      (214) 420-8900 (T)
                                                      (214) 420-8909 (F)
                                                      emadden@reidcollins.com

---

[58] *See* Order at 10.

[59] Finally, the Trustee notes that the issues regarding the Rebate ruled on in the Order relate to the arguments regarding the Rebate set forth in the briefing on the motion to dismiss filed in the *Pete's* Adversary.  The Trustee is contemporaneously filing a motion for leave to file a sur-reply in that proceeding to address the issues that overlap with those discussed herein.

bking@reidcollins.com
loppenheimer@reidcollins.com

-and-

Michael M. Eidelman
William W. Thorsness
Michael D. Leifman
VEDDER PRICE P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
(312) 609-7500 (T)
(312) 609-5005 (F)
meidelman@vedderprice.com
wthorsness@vedderprice.com
mleifman@vedderprice.com